LEMMON, Justice,
concurring in the denial of the application.
I voted to stay the execution in order to secure additional time for review of the identification issue, although this court denied certiorari on precisely the same issue eleven months ago.[1]
Relator was convicted on rock solid identifications provided immediately after the murder by the victim’s two children, then aged twelve and eleven years old respectively. The children informed their aunt in separate conversations that relator, who was their next door neighbor and well known to both of the children, had broken into their house and stabbed their mother. Indeed, the younger child was herself the victim of a vicious stabbing by the murderer.
Every court which considered this conviction on direct review concluded that relator received a fair trial and that there was no question as to the reliability of the jury’s decision.
Six months after the conviction new evidence surfaced which possibly suggested that George Stinson, the victim’s former *1080 live-in lover from whom the victim had separated five months before the murder, may have been the murderer. Although this information was provided to the New Orleans Police Department, the authorities declined to investigate because relator had already been convicted of the murder. They further failed to provide this information to relator or his attorney. This unconscionable failure to provide relator due process was ultimately recognized by the federal district court, which ordered the state court to conduct an evidentiary hearing to determine whether relator should be granted relief. It is important to note that the due process violation did not entitle relator to a new trial, but rather entitled relator to file an otherwise untimely motion for a new trial based on newly discovered evidence and to have an evidentiary hearing on whether that newly discovered evidence warranted the granting of a new trial.
Under the appropriate standards at a hearing on a motion for a new trial based on newly discovered evidence, the trial judge does not weigh the overall evidence (including the newly discovered evidence), but rather determines whether the the newly discovered evidence is of sufficient quality to create a reasonable doubt which did not otherwise exist and to warrant a decision on guilt by a new jury. State v. Talbot, 408 So.2d 861 (La.1981); State v. Prudholm, 446 So.2d 729 (La.1984). The question before the court now (and also in No. 87-KP-0574 decided in September 1987) is whether the trial judge properly applied this standard on remand from the federal court.
There were several items of newly discovered evidence. The first was the testimony by relator’s mother that Stinson was at the victim’s home the evening before the murder and said he would return later. No other evidence was provided to support the testimony of this obviously biased witness. On the other hand, the state presented evidence that the mother had attempted to have another witness offer perjured testimony which would provide her son with an alibi.
The second item of evidence was a statement by Francis McWilliams, an inmate who shared a jailcell in Michigan with Stin-son after Stinson had been arrested for the murder of his wife in Michigan. McWil-liams told police officers that Stinson had not only admitted killing his wife in Michigan by stabbing her in the chest and neck, but also stated his common law wife in New Orleans had “died the same way”.[2] During his interview with the Michigan police, McWilliams also produced notes written by him shortly after his conversation with relator, which included the following notation:
“What happened to your wife in New Orleans? ‘The same thing that happened to this one.’
“You mean you knocked her off too? ‘Ya,’ he said with a positive nod of his head.
“You know behind this case here; they may start investigating you on that New Orleans case. ‘They already got some guy for that. I was cleared [sic].’ I would still let my attorney know about it so he won’t be surprised.”
When questioned about this statement in Michigan, Stinson admitted that he told McWilliams that his common law wife in New Orleans had died the same way as his Michigan wife, but denied he had stated that he was the one who administered the stabbing.
Significantly, McWilliams was brought to New Orleans to testify in the 1987 hearing in state court ordered by the federal district court, but was not called by either side to testify. Therefore, neither his hearsay statement to the Michigan police nor his hearsay handwritten notes were corroborated by the available testimony of the declarant.
The third item of evidence was provided by Stinson’s first wife whom he had stabbed in the chest and neck in 1959 and left for dead. This evidence had some pro *1081 bative value as to Stinson’s propensity to stab his mate in the chest and neck when provoked, but did not provide any direct link between Stinson and the New Orleans murder.
This court reviewed the exact same evidence last year in No. 87-KP-0574 and declined to grant relief. Relator’s mother’s statement is suspect, McWilliams was not called to testify to corroborate his prior statement to the police and his handwritten notes or to rebut Stinson’s denial of the contents of a portion of the statement, and Stinson’s first wife’s testimony, standing alone, has little probative value. After reconsidering the entire matter, I have again concluded that the newly discovered evidence does not rise to a level of quality which would create a reasonable doubt not previously existing or would warrant presentation of the issues of guilt or sentence to a new jury.

. In No. 87-KP-0574, this court denied certiora-ri, with Justices Calogero and Dennis voting to grant.

. This statement to the Michigan police was the information provided to the New Orleans au-thorites who declined to investigate further or to disclose the information to relator or his counsel.